[No. C016397. Third Dist. Jan. 3, 1995.]

A. BRUCE WALTON III et al., Plaintiffs and Respondents, v.
BEVERLY WALTON, as Administrator, etc., Defendant and Appellant.

**[Opinion certified for partial publication*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication
with the exception of parts II and III of the Discussion.

278

## COUNSEL

Eisen & Johnston, Jay-Allen Eisen, Marian M. Johnston, Karen Leaf and Ann Perrin Farina for Defendant and Appellant.

Hennelly & Grossfeld, Brian M. Englund, Fredrick S. Cohen and Daniel P. Whaley for Plaintiffs and Respondents.

## OPINION

**SIMS, Acting P. J.**—Defendant Beverly Walton, as administrator for the estate of A. Bruce Walton II (Bruce Jr.),[1] appeals from a judgment awarding specific performance of an oral contract to make a will in consolidated actions brought by plaintiffs A. Bruce Walton III (Bruce III) and Richard L. Walton (Rick). Defendant contends the trial court erred in denying her a jury trial and in granting specific performance on the merits.

In the published portion of the opinion, we conclude the trial court properly adjudicated the dispute without a jury. In the unpublished portion of the opinion, we conclude the trial court properly granted specific performance. We shall therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In May 1992, Bruce III and Rick filed separate complaints against defendant in her capacity as administrator of their father's estate, claiming entitlement to specific percentages of the stock in the family business, SBC Industries, Inc., pursuant to an oral agreement by Bruce Jr. to devise the stock to plaintiffs in his will. By amended complaints, plaintiffs each alleged the following counts: (1) breach of contract, (2) quasi-specific performance of an oral contract to make a will,[2] (3) common count—money had and received, and (4) restitution.

The two complaints were consolidated, per stipulation of the parties.

Plaintiffs moved to sever and try separately the equitable claim for quasi-specific performance, pursuant to Code of Civil Procedure sections

---

[1]For ease of reference we adopt the name designations used by the trial court.

[2]"Quasi-specific performance" is a term used for enforcement of a contract to make a will because the court cannot compel the making of a will but rather declares a constructive trust upon the property in the hands of those who have succeeded to the estate, which is in effect the equivalent of specific performance. (*Ludwicki* v. *Guerin* (1961) 57 Cal.2d 127, 130 [17 Cal.Rptr. 823, 367 P.2d 415]; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 28, pp. 706-707.)

598[3] and 1048.[4] Defendant demanded a jury trial and opposed severance on the ground she would be denied her right to jury trial. The trial court granted the motion to sever and set the case for nonjury trial of the quasi-specific performance claim, with a later date set for jury trial of the legal claims if needed.

The following evidence was adduced at trial (with quoted matter taken from the trial court's statement of decision):

In the early 1970's, plaintiffs owned stock in a family-held corporation, State Box Company. Bruce III owned 37.042 percent of the stock. Rick owned 12.775 percent, held in trust for him, with Bruce Jr. as trustee. The remainder of the stock of State Box Company (50.183 percent) was owned by Bruce Jr.

Bruce III worked at State Box Company until 1970, when he returned to college. Rick also worked at the company but stopped due to health reasons.

". . . In late 1973, Bruce III discussed with Bruce Jr. the possibility that Bruce Jr. might purchase Bruce III['s] and Rick's shares in State Box Company. Bruce III believed that State Box Company was worth approximately $3 million.

". . . In early 1974, Bruce Jr. offered that State Box Company would redeem the shares of Bruce III and Rick for $40.00 per share, most of which would be paid for with promissory notes at an interest rate of 4%.

". . . Bruce Jr. also entered into an oral contract in early 1974, providing that if Bruce III and Rick would agree to allow their shares to be redeemed on the terms offered by Bruce Jr., then upon Bruce Jr.'s death, he would return the shares to them, provided he still owned them. Accordingly, Bruce III and Rick agreed to the terms of redemption offered by Bruce Jr.

---

[3]Undesignated statutory references are to the Code of Civil Procedure.

Section 598 provides in part: "The court may, when the convenience of witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be promoted thereby, on motion of a party, after notice and hearing, make an order . . . that the trial of any issue or any part thereof shall precede the trial of any other issue or any part thereof in the case, except for special defenses which may be tried first pursuant to Sections 597 and 597.5. . . ."

[4]Section 1048, subdivision (b), provides: "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any cause of action, including a cause of action asserted in a cross-complaint, or of any separate issue or of any number of causes of action or issues, preserving the right of trial by jury required by the Constitution or a statute of this state or of the United States."

". . . Bruce Jr., Bruce III and Rick understood this oral contract to mean that Bruce Jr. would return their respective percentage ownerships (Bruce III - 37.042%; Rick - 12.77%) to them, upon Bruce Jr.'s death, provided he still owned the family business that owned the real property at 840 S. River Road, West Sacramento, California. This real property was the principal asset of State Box Company, and Bruce III and Rick did not believe that Bruce Jr. was likely to dispose of that asset."

The deals were consummated in February 1974 in the form of a stock redemption by State Box Company. Plaintiffs were each represented by counsel but neither mentioned to his attorney that Bruce Jr. had agreed to bequeath the stock back to plaintiffs. As found by the trial court, plaintiffs considered the oral agreement to be a "private, family matter, that did not need to be documented and that should not be discussed outside of the Walton family."

A few months later, State Box Company ceased to exist. Bruce Jr. merged it with another company he owned, Pres-to-Logs Distributors, to gain tax advantages. The new corporation was named SBC Industries, Inc. It continued to own land formerly owned by State Box Company and continued to use the State Box Company logo and bank accounts.

In 1982, Bruce Jr. executed a will disinheriting plaintiffs. Although plaintiffs heard rumors they were disinherited, they believed the disinheritance affected only property other than the stock affected by the agreement.

In 1984, Bruce Jr. suffered a severe stroke, which left him physically incapacitated.

In October 1991, Bruce Jr. died. At his death he held 100 percent of the stock of SBC Industries, Inc.

In March 1992, Bruce III and Rick filed claims against Bruce Jr.'s estate in the probate court. Bruce III demanded $4,445,040, as the value of the stock Bruce Jr. promised to devise to him; Rick demanded $1,440,000. The claims were rejected, and the present actions were filed.

Following the bench trial of the quasi-specific performance claim, the trial court issued a statement of decision in plaintiffs' favor, finding (1) plaintiffs and Bruce Jr. entered an agreement whereby plaintiffs allowed their stock to be redeemed on the terms offered by Bruce Jr., who agreed to devise the shares to plaintiffs upon his death if he still owned the family business, (2) the fair market value of plaintiffs' stock at the time of redemption was

$73.17 per share, (3) Bruce Jr.'s promise to return the stock to plaintiffs was additional consideration on which plaintiffs agreed to sell at $40 per share. The court also found the oral contract was definite, complete and sufficiently clear to be enforceable; the contract was fair, just and reasonable and supported by adequate consideration; plaintiffs fully performed the contract; Bruce Jr. breached the agreement; and plaintiffs' remedy at law was inadequate.

The trial court further found the merger of State Box Company with Pres-to-Logs Distributors and the subsequent name change to SBC Industries did not prevent the court from awarding equitable relief. The merger was done for tax reasons, which benefited Bruce Jr. There was no significant change in the operations of the corporation after the merger. Both before and after the merger the principal asset of the company was real property constituting 99.7 percent of the company's assets.

"The parties did not contemplate that the oral contract could be avoided by the pretext of a change in corporate form. Further, the Court, sitting in equity, has considerable discretion, which it chooses to exercise, in determining the appropriate relief.

"The nature of the oral agreement is such that quasi-specific performance is the appropriate remedy."

Plaintiffs dismissed all other causes of action.

The trial court entered judgment that the "Estate of A. Bruce Walton II holds 37.042% of the outstanding shares of stock of SBC Industries, Inc. in trust for A. Bruce Walton III and 12.775% of the outstanding shares of stock of SBC Industries, Inc. in trust for Richard Lynn Walton." The court ordered defendant to deliver the share certificates to plaintiffs and reserved jurisdiction to supervise and compel compliance.

## DISCUSSION

### I. *Right to Jury Trial*

Defendant contends the trial court erred in denying her a jury trial in violation of California Constitution, article I, section 16, which provides:

"Trial by jury is an inviolate right and shall be secured to all . . . ."[5] We disagree.

## A. *No Waiver*

■ We first dispose of plaintiffs' assertion that defendant waived the right to a jury trial by failing to renew her demand for jury trial at the commencement of the court trial and by failing to post jury fees. We find no waiver.

The case was originally set for a trial by jury (at plaintiffs' request) to begin on April 19, 1993. Before trial, plaintiffs moved for severance and a separate *court* trial of the quasi-specific performance claim. Defendant responded with a written demand for a jury trial. Defendant also filed a written opposition arguing the existence and interpretation of the alleged oral contract must first be determined by a jury, as a prerequisite to equitable relief.

On March 8, 1993, the court granted plaintiffs' motion, ordered the quasi-specific performance claim to proceed to a court trial on April 19th, the date originally set for trial of the entire action, with a jury trial of any remaining legal issues to commence May 17th, if necessary.

Defendant apparently did not deposit jury fees for the April 19th trial date, though she did deposit jury fees in advance of the May 17th trial date.[6]

Under these circumstances, there was no waiver. Plaintiffs cite no authority requiring defendant to renew the jury demand at the commencement of the court trial. There can be no waiver of jury trial by implication. (*Cohill* v. *Nationwide Auto Service* (1993) 16 Cal.App.4th 696, 700 [19 Cal.Rptr.2d 924].) The exclusive methods of waiver are set forth in section 631. (*Ibid.*) Section 631, subdivision (c), provides that where, as here, the party who initially demanded a jury trial waives the right to jury trial after the assignment for trial to a specific department of the court, the other party's right to a jury trial is waived by failing "promptly to demand trial by jury before the judge in whose department the waiver . . . was made" or by failing timely to deposit jury fees 25 days before trial.

[5]In her reply brief defendant cites a statutory right to jury trial (§ 592 [issues of fact must be tried by a jury in actions for money claimed due upon contract or as damages for breach of contract]). However, that statute adds nothing to defendant's argument.

[6]At defendant's request, filed August 16, 1994, we take judicial notice of documents reflecting payment of the jury fees deposit on April 27, 1993.

Here, defendant promptly demanded a jury trial when plaintiffs waived their demand by moving for a separate court trial. The court refused defendant's demand. No further demand was required. Moreover, defendant "having been refused a jury [was] not thereafter required to deposit fees for a jury trial which had been denied [her]. The law does not require the performance of an idle act. (Civ. Code, § 3532.)" (*Robinson* v. *Puls* (1946) 28 Cal.2d 664, 667 [171 P.2d 430].)

We conclude defendant has not waived the jury trial issue.

## B.   *No Right to Jury Trial*

■ Our Supreme Court has said: "The right to a jury trial is guaranteed by our Constitution. (Cal. Const., art. I, § 16.) We have long acknowledged that the right so guaranteed, however, is the right as it existed at common law in 1850, when the Constitution was first adopted, 'and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact.' [Citations.] As a general proposition, '[T]he jury trial is a matter of right in a civil action at law, but not in equity.' [Citations.]

" ' "If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the *gist* of the action. A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law." ' [Citation.] On the other hand, if the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial. (E.g., *Hartman* v. *Burford* (1966) 242 Cal.App.2d 268, 270 [51 Cal.Rptr. 309] [enforcement of promise to make a will] . . . .) Although . . . 'the legal or equitable nature of a cause of action ordinarily is determined by the mode of relief to be afforded' [citation], the prayer for relief in a particular case is not conclusive [citations]. Thus, 'The fact that damages is one of a full range of possible remedies does not guarantee . . . the right to a jury . . . .' [Citation.]" (*C & K Engineering Contractors* v. *Amber Steel Co.* (1978) 23 Cal.3d 1, 8-9 [151 Cal.Rptr. 323, 587 P.2d 1136], original italics.)

■ There is no constitutional right to a jury trial in an action for specific performance, even though such action implicates legal issues regarding contract formation. Thus, at common law an action for specific performance was triable only in a court of equity, wherein a jury trial was not a matter of

right. (*Connell* v. *Bowes* (1942) 19 Cal.2d 870, 871 [123 P.2d 456].) As we said many years ago: "Actions to enforce specific performance were not recognized at common law. [Citation.] Such actions are wholly of equitable cognizance. [Citations.]" (*Schaefer* v. *United Bank & Trust Co.* (1930) 104 Cal.App. 635, 641 [286 P. 723] [no right to jury trial where main purpose of action was to compel specific performance of agreement to issue certain corporate stock].) "The fact that in an action for specific performance of an agreement the court must determine the existence of the agreement does not in itself transform the action into one at law. [Citation.]" (*Hastings* v. *Matlock* (1985) 171 Cal.App.3d 826, 835 [217 Cal.Rptr. 856].)

Additionally, at common law an action for specific performance of an agreement to make a will was triable in equity for another reason—enforcement of the agreement implicated equitable principles of trusts.

Thus, though not a case about the jury trial guarantee, *Owens* v. *McNally* (1896) 113 Cal. 444 [45 P. 710], citing pre-1850 common law, held ". . . a man may make a valid agreement binding himself to dispose of his property in a particular way by last will and testament, and a court of equity will enforce such an agreement specifically by treating the heirs as trustees and compelling them to convey the property in accordance with the terms of the contract." (*Id.* at p. 448; see also *Redke* v. *Silvertrust* (1971) 6 Cal.3d 94, 100 [98 Cal.Rptr. 293, 490 P.2d 805] [contract to make a particular testamentary disposition of property is valid and enforceable].)

"An action of the type involved here has been called one for quasi-specific performance of the contract to make a will. [Citation.] Since the making of a will cannot be compelled, there can be no specific performance of such a contract in the strict sense, but under certain circumstances equity will give relief equivalent to specific performance by impressing a constructive trust upon the property which decedent had promised to leave to plaintiff. [Citations.] The jurisdiction over such actions rests in equity and not in probate. [Citation.]" (*Ludwicki* v. *Guerin* (1961) 57 Cal.2d 127, 130 [17 Cal.Rptr. 823, 367 P.2d 415].)

"In enforcing the testator's contract the courts use the theory of constructive trusts as well as that of specific performance. The estate, and through it the legatees, would gain assets by the wrongful act of the testator; therefore equity intervenes . . . to establish an involuntary trust for the benefit of the person who would otherwise have the assets. [Citations.]" (*Thompson* v. *Beskeen* (1963) 223 Cal.App.2d 292, 296 [35 Cal.Rptr. 676].)

In *Hartman* v. *Burford* (1966) 242 Cal.App.2d 268 [51 Cal.Rptr. 309], the plaintiff brought an action seeking specific performance of an oral agreement by her parents to devise property to her by will. The trial court

impaneled a jury, but the court treated the verdict as advisory and independently found the oral agreement had not been proved. The appellate court ruled the trial court could properly disregard the jury's verdict. There was no right to a jury trial because the action was one in equity. (*Id.* at p. 270.) "[W]here, as here, the pleadings disclose that the action is essentially one in equity and that the relief demanded depends upon the application of equitable doctrines, the parties are not entitled to a jury trial. [Citations.] Here appellant seeks a kind of relief that has been described as 'quasi specific performance.' [Citations.] The prayer of the complaint is for a decree declaring that respondents hold one-third of the estate of [the decedent] for the benefit and account of appellant. Thus the action is clearly one in equity, seeking equitable relief, and jury trial is not a matter of right." (*Ibid.*)

We note the Supreme Court has cited *Hartman* with approval as an example of an action for which there is no constitutional right to a jury trial: "[I]f the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial. (E.g., *Hartman* v. *Burford* (1966) 242 Cal.App.2d 268, 270 [51 Cal.Rptr. 309] [enforcement of promise to make a will] . . . .)" (*C & K Engineering Contractors* v. *Amber Steel Co.*, *supra*, 23 Cal.3d at p. 9 [no right to jury trial in action for damages for breach of contract where action was based on equitable principle of promissory estoppel].)

Thus, there is no constitutional right to a jury trial in an action for quasi-specific performance of an agreement to make a will.

Defendant appears to agree with this principle. Thus, she accepts *Hartman*'s holding that jury trial is not a matter of right in an action for quasi-specific performance of a promise to devise property. Defendant merely contends *Hartman* is distinguishable because there the plaintiff sought *only* quasi-specific performance. Defendant argues her case is different because plaintiffs also pled a legal claim for damages for breach of contract (as well as other legal claims).

■ Defendant's argument may be summarized as follows: The complaints alleged breach of contract as the first count and incorporated those allegations by reference in the second count for quasi-specific performance. California follows Pomeroy's "primary right" theory of pleading, under which the pleading of different forms of relief does not mean there is more than one cause of action. The primary right of a plaintiff seeking to enforce a contract is legal in nature, regardless of whether the plaintiff seeks legal relief alone (damages for breach of contract) or alternatively seeks equitable relief (specific performance). According to defendant, the right to jury trial

could not be defeated by adding an equitable claim for specific performance and then severing the equitable claim for separate trial. As defendant puts it: "[S]pecific performance was not a separate or severable cause of action at all. Plaintiffs' complaint set out only one cause of action, and sought both legal and equitable relief for the same, single cause of action." Defendant believes the proper procedure would have been to submit to a jury the questions whether an agreement existed and was breached. If the jury so found, then the trial court could grant the equitable relief of quasi-specific performance if the court found such relief appropriate. If the trial court did not find such relief appropriate, the jury would decide the question of damages for breach of contract.[7]

We believe defendant's argument is flawed. The linchpin of her argument is the asserted applicability of the "primary right" theory of pleading to the question of the constitutional right to a jury trial. However, the primary right theory of pleading does not control the determination of the jury trial guarantee.

---

[7]For purposes of this appeal we will assume jury trial would be a matter of right had the complaint alleged only a legal claim for damages for breach of contract. We note, however, that defendant has not shown such an action—which still implicates constructive trust principles—would have been triable at law in 1850. She cites *Ripling* v. *Superior Court* (1952) 112 Cal.App.2d 399 [247 P.2d 117] for the proposition that even though an action to impose a constructive trust is considered equitable in nature, some such actions were maintainable at common law as legal actions for debt or indebitatus assumpsit, for which no jury trial right attached. That case involved an action seeking return of funds held in trust. The appellate court emphasized the case was not truly one for a declaration of trust because the defendant admitted the trust but merely disputed that the money remained unpaid. (*Id.* at p. 407.) The common law action of indebitatus assumpsit generally involved the duty to pay money. (1 Corbin on Contracts (1963), § 20, pp. 50-51; Ames, *The History of Assumpsit* (1888) 2 Harv. L.Rev. 1, 64.) In another case cited by defendant, the court discussed the common law action of debt as one for recovery of a debt, i.e., money in an amount certain or readily ascertainable. (*Grossblatt* v. *Wright* (1951) 108 Cal.App.2d 475, 484, fn. 18 [239 P.2d 19].) We have noted that where recovery of specific, identified property is sought on the ground it is impressed with a trust, the issue does not involve an indebtedness of the estate, even though the complaint alternatively seeks the value of the property. (*Pay Less Drug Stores* v. *Bechdolt* (1979) 92 Cal.App.3d 496, 501-502 [155 Cal.Rptr. 58] [action for rescission of contract].) Moreover, in *Woolsey* v. *Woolsey* (1932) 121 Cal.App. 576 [9 P.2d 605], we rejected an argument that a complaint against an estate administrator, to declare a trust in a bank account, alleged an action at law in the nature of assumpsit. The demand for judgment was "dependent upon the equitable establishment of the alleged trust." (*Id.* at p. 581.) Finally, we note this type of case implicates the equitable principle of estoppel to plead the statute of frauds. (Prob. Code, § 150, subd. (c) [effective Jan. 1985, contract to make a will can be established only by a writing].) Before January 1985 the same restriction was contained in the statute of frauds (Civ. Code, § 1624) but was deleted by Statutes 1983, chapter 842, section 6, page 3021 operative January 1, 1985. Defendant cites the statute of frauds only in connection with her argument that the court erred in granting specific performance, and plaintiffs point out defendant did not assert the statute of frauds in the trial court.

## 1. *Primary Right Theory Does Not Control*

■ The "primary right" theory of pleading is a "theory of the 'cause of action' [which] vitally affects the solution of such pleading problems as splitting [and], amendment . . . , and has an important place in the application of the doctrine of res judicata." (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 23, p. 66, italics omitted.) Under this theory, the "cause of action" is comprised of the facts from which a primary right of the plaintiff and a corresponding duty in the defendant have arisen, together with facts constituting the defendant's delict or act of wrong. (4 Witkin, *op. cit. supra*, at p. 67.) There is a distinction between "the cause of action (the primary right and duty, and the violation thereof) and the remedy or relief sought. The violation of one primary right may sometimes give rise to two or more remedial rights, entitling the plaintiff to two or more remedies or forms of relief; and the fact that several forms of relief are sought, whether legal or equitable or both, does not mean that there is more than one cause of action. [Citations.]" (4 Witkin, *op. cit. supra*, § 29, p. 73.) "Where a single right and injury are involved, there is only one cause of action though the complaint seeks distinct legal or equitable remedies." (4 Witkin, *op. cit. supra*, § 30, p. 74.)

Thus, the "primary right" does not encompass the remedy.

■ However, the determination of the jury trial guarantee does not turn on the "primary right" but rather on the "gist" of the action, a concept which *does* encompass consideration of the type of relief sought. Thus, the Supreme Court in *C & K Engineering Contractors* found the "gist" of an action seeking damages for breach of contract was equitable because relief depended upon application of the equitable doctrine of promissory estoppel. (23 Cal.3d at p. 9.) "[T]he complaint purports to seek recovery of damages for breach of contract, in form an action at law in which a right to jury trial ordinarily would exist. [Citations.] . . . [H]owever, the complaint seeks relief which was available only in equity, namely, the enforcement of defendant's gratuitous promise to perform its bid through application of the equitable doctrine of promissory estoppel." (*Ibid.*) The legal or equitable "gist" of the action is ordinarily determined by the mode of relief to be afforded, though the prayer for relief is not conclusive. (*Ibid.*)

Thus, Pomeroy's "primary right" theory of pleading does not control determination of the right to a jury trial. The fact that plaintiffs may have alleged only one "primary right," legal in nature, does not mean the "gist" of the action is legal for jury trial purposes.

Defendant cites two cases which referred to the "primary right" as legal in actions to enforce promises to make a will. (*Morrison v. Land* (1915) 169

Cal. 580, 586 [147 P. 259]; *Shive* v. *Barrow* (1948) 88 Cal.App.2d 838, 845 [199 P.2d 693].) However, neither case involved the question of the right to a jury trial. In both cases, the question was whether the plaintiff had to show inadequacy of the legal remedy in order to obtain specific performance. The answer was yes. (*Ibid.*) These cases have no bearing on the questions before us.

Defendant cites *Medeiros* v. *Medeiros* (1960) 177 Cal.App.2d 69 [1 Cal.Rptr. 696], where we held a jury trial was a matter of right in an action to quiet title despite the contention the action was equitable. That decision, however, was based on the rule that the nature of a quiet title action as legal or equitable depended on whether possession of the property was at issue. (*Id.* at pp. 72-73.) *Medeiros* thus has no bearing on this case.

We conclude defendant's reliance on Pomeroy's primary right theory of pleading is unavailing.

### 2. *Alternative Pleading and Severance*

■ Defendant contends the right to a jury trial cannot be defeated by joining equitable claims with legal claims and then severing the equitable claim for nonjury trial. She argues severance was improper because section 1048 (fn. 4, *ante*) expressly provides that severance may not be employed to deprive a party of the constitutional right to a jury trial. We find no merit in the contentions.

■ A plaintiff may plead inconsistent, mutually exclusive remedies, such as breach of contract and specific performance, in the same complaint. (*Brandolino* v. *Lindsay* (1969) 269 Cal.App.2d 319, 324 [75 Cal.Rptr. 56]; 4 Witkin, Cal. Procedure, *op. cit. supra*, Pleading, §§ 356-361, pp. 411-415.) Such alternative pleading is not a "joinder" of causes of action, because the "seeking of different kinds of relief does not establish different causes of action." (*California Trust Co.* v. *Cohn* (1932) 214 Cal. 619, 629-630 [7 P.2d 297].) ■ The statutory provisions for severance and separate trial are not limited to separate trial of a cause of action but also authorize separate trial of any issue. (§ 598, fn. 3, *ante* [court may order that trial of "any issue or any part thereof" shall precede trial of any other issue or part thereof]; § 1048, fn. 4, *ante* [court may order separate trial of any separate cause of action or "any separate issue"].)

■ Where mutually exclusive remedies are pled, there need not be a trial on both remedies. At some point an election of remedy may be compelled. (4 Witkin, *op. cit. supra*, § 363, pp. 416-417.) ■ Here,

plaintiffs in effect elected to proceed on their quasi-specific performance claim—a claim which defendant agrees did not give rise to a right to jury trial. The legal claims never went to trial and were ultimately dismissed. Defendant considers it significant that the legal claims were not dismissed until *after* the court trial of the equitable claim. However, defendant fails to show she objected to that procedure.

That the trial court severed the claims was not improper. ■ "It is well established that, in a case involving both legal and equitable issues, the trial court may proceed to try the equitable issues first, without a jury (or . . . with an advisory jury), and that if the court's determination of those issues is also dispositive of the legal issues, nothing further remains to be tried by a jury. [Citations.]" (*Raedeke* v. *Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671 [111 Cal.Rptr. 693, 517 P.2d 1157].)

■ In arguing that joinder of equitable with legal claims cannot deprive a party of the right to a jury trial, defendant ignores the distinction that this case involved mutually exclusive remedies. She cites inapposite cases where a claim of one nature was raised by way of cross-complaint to a complaint of a different nature (e.g., *Connell* v. *Bowes* (1942) 19 Cal.2d 870 [123 P.2d 456] [in action for specific performance, defendant's cross-complaint for damages gave rise to right to jury trial]), or where one party raised cumulative legal and equitable remedies that were not mutually exclusive (e.g., *Pacific Western Oil Co.* v. *Bern Oil Co.* (1939) 13 Cal.2d 60 [87 P.2d 1045] [action for damages for past trespass and injunction to restrain future trespass]; *Hutchason* v. *Marks* (1942) 54 Cal.App.2d 113 [128 P.2d 573] [equitable claim for cancellation of instruments (which depended on rescission) and legal claim for fraud]).

In such cases, all claims—legal and equitable—must be tried, and the right to jury trial cannot be defeated by severance of the equitable claim. But where mutually exclusive remedies are pled, there need not be a trial on both the legal and the equitable remedy. Resolution of one renders the other moot. Thus, defendant's cited authorities are not helpful.

Defendant cites *Selby Constructors* v. *McCarthy* (1979) 91 Cal.App.3d 517 [154 Cal.Rptr. 164], for the proposition that where legal and equitable issues are joined in the same action the parties are entitled to a jury trial on the legal issues. There, a general contractor sued on a contract to obtain a money judgment and to enforce a mechanic's lien. (*Id.* at p. 525.) The property owner asserted defenses of nonperformance and negligent performance and cross-complained for damages on those grounds. (*Id.* at p. 520.) The appellate court reversed the trial court's judgment because the defendant had been

denied a jury trial. (*Id.* at p. 527.) However, in that case the appellate court found that the only equitable issues, if any, were those relating to the manner in which the lien was perfected. (*Ibid.*) Thus, *Selby* did not present a case of mutually exclusive claims where trial of equitable issues might eliminate the need for a jury trial at all.

Other cases cited by defendant involved actions combining legal claims for damages for past trespass or nuisance with a request for an injunction against future trespass or nuisance. (*Pacific Western Oil Co.* v. *Bern Oil Co., supra,* 13 Cal.2d at p. 68; *Hughes* v. *Dunlap* (1891) 91 Cal. 385, 390 [27 P. 642]; *Arciero Ranches* v. *Meza* (1993) 17 Cal.App.4th 114, 125 [21 Cal.Rptr.2d 127]; *Farrell* v. *City of Ontario* (1919) 39 Cal.App. 351, 356-357 [178 P. 740].) The basis for decision in those cases, however, was the historical fact that under English common law in 1850 a plaintiff had to establish at law the right to an injunction to restrain violation of a common law right. (*Ibid.*) These cases do not help resolve the case before us.

Finally, defendant cites the rule that the right to jury trial of a legal claim cannot be defeated through the device of bringing suit for declaratory relief. (*Patterson* v. *Insurance Co. of North America* (1970) 6 Cal.App.3d 310, 315-316 [85 Cal.Rptr. 665] [insured's cross-complaint for indemnity against insurer for refusal to defend insured in action by injured third party was legal in nature though cross-complaint was action for declaratory relief].) However, the principle presented by that situation is that "it is erroneous to say that all declaratory relief actions are equitable; an action for declaratory relief has been characterized as '*sui generis.*' [Citation.] Where an action for declaratory relief is in effect used as a substitute for an action at law for breach of contract, a party is entitled to a jury trial as a matter of right. [Citations.] ' "[C]ourts will not permit the declaratory action to be used as a device to circumvent the right to a jury trial in cases where such right would be guaranteed if the proceeding were coercive rather than declaratory in nature." ' [Citations.]" (*Patterson, supra,* 6 Cal.App.3d at p. 315.) Thus, in *Patterson* the complaint sought breach of contract relief in a nominally equitable form of action. Here, in contrast, the claim for quasi-specific performance did not seek breach of contract relief. To the contrary, the entire basis for quasi-specific performance was that the remedy at law was inadequate.

Defendant cites United States Supreme Court cases construing the federal constitutional right to jury trial, though she acknowledges the federal provision for jury trial in civil cases does not apply to the states. (*Crouchman* v. *Superior Court* (1988) 45 Cal.3d 1167, 1173, fn. 5 [248 Cal.Rptr. 626, 755 P.2d 1075].) Defendant nevertheless urges application of the same policy

safeguarding the constitutional guarantee. We do not find the cited authorities helpful. Thus, defendant cites *Beacon Theatres* v. *Westover* (1959) 359 U.S. 500 [3 L.Ed.2d 988, 79 S.Ct. 948], for the proposition that where a complaint for equitable relief and a cross-complaint for legal relief raise common factual questions, the defendant's right to a jury trial cannot be denied by a separate court trial of the equitable issues. Here, however, as we have explained, there was no cross-complaint but only alternative pleading of mutually exclusive remedies. Defendant also cites *Lytle* v. *Household Manufacturing, Inc.* (1990) 494 U.S. 545 [108 L.Ed.2d 504, 110 S.Ct. 1331], which involved independent and distinct claims which were not mutually exclusive. (*Id.* at pp. 548-549 [108 L.Ed.2d at p. 513.])

Thus, all cases cited by defendant are distinguishable. Defendant cites no authority precluding court trial in the circumstances of this case, where the legal and equitable claims were inconsistent, mutually exclusive remedies such that trial need not be had on both.

We conclude there was no violation of defendant's constitutional right to a jury trial.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed. Respondents shall recover costs on appeal.

Scotland, J., and Nicholson, J., concurred.

---

*See footnote, *ante*, page 277.