[No. B124087. Second Dist., Div. One. Dec. 18, 1998.]

AMERICAN MOTORISTS INSURANCE COMPANY, Petitoner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MONTROSE CHEMICAL CORPORATION OF CALIFORNIA, Real
Party in Interest.

**COUNSEL**

Hewitt & Prout, Stephen L. Hewitt, Erica Arouesty, Henry Truzskowski; Drinker, Biddle & Reath, John Chesney and Paul H. Saint-Antoine for Petitioner.

No appearance for Respondent.

Latham & Watkins, David L. Mulliken, Dorn G. Bishop and Julia E. Parry for Real Party in Interest.

**OPINION**

**VOGEL (Miriam A.), J.**—An insured sued its insurer for declaratory relief, damages and other remedies, contending the carrier had a duty to defend and indemnify the insured in three third party actions. In 1993, we affirmed orders adjudicating the duty-to-defend issue in the insured's favor and directing the carrier to pay for the insured's defense in the underlying actions. The carrier now claims the insured's defense costs were "unreasonable" and that it is entitled to have a jury determine the amount that ought to be reimbursed by the insured. The trial court denied the carrier's request for a jury trial, and at the same time ruled that it would be the carrier's burden to prove the fees and costs were *un*reasonable (as opposed to the insured's burden to prove they were reasonable and necessarily incurred). We agree with the trial court.

### BACKGROUND

From 1948 to 1982, Montrose Chemical Corporation of California manufactured DDT. During the early 1980's, Montrose was named as a defendant

in several private and governmental environmental contamination actions (referred to by the parties and by us as *Newman, Stringfellow* and *Parr-Richmond*).[1] Montrose tendered the defense of all three contamination actions to seven of its insurance carriers. Although some refused to defend, others agreed to provide a defense subject to a reservation of rights and subject to separate "interim defense agreements" entered for each of the underlying actions to allocate Montrose's attorneys' fees and other costs among the participating carriers. American Motorists Insurance Company (AMICO), one of the participating carriers, signed two interim defense agreements (*Newman* and *Stringfellow*) and thereafter "sporadically" paid a fractional share of Montrose's defense costs in those actions. AMICO refused to participate in the defense of the *Parr-Richmond* action, and refused to sign the *Parr-Richmond* interim defense agreement.

In 1986, Montrose sued AMICO for declaratory relief, breach of the implied covenant of good faith and fair dealing, and breach of various statutory duties. In separate causes of action, Montrose asked for declarations that AMICO was obligated to defend and indemnify Montrose in the contamination actions, for specific performance of AMICO's duty to defend, and for damages for AMICO's failure to provide benefits under the insurance policies. In early 1989, AMICO cross-complained against Montrose for declaratory relief, asking for a declaration that it was not obligated to defend or indemnify Montrose and for reimbursement (equitable recoupment) of any and all amounts paid by AMICO for Montrose's defense in the three contamination actions.

In the summer of 1989, Montrose filed a motion for summary adjudication of issues in which it asked the trial court to decide the duty to defend issues. In August of that year, the trial court granted Montrose's motion, finding that, under the terms of the policies and the nature of the underlying actions, AMICO was obligated to defend Montrose in all three contamination actions. AMICO shrugged (we presume) but did nothing.

In 1991, Montrose asked the trial court to order AMICO to start paying its share of the defense costs. In opposition, AMICO insisted the summary adjudication order was interlocutory and, as such, immediately enforceable only if Montrose satisfied the pleading, proof, and bond requirements for a mandatory preliminary injunction or some other form of statutory provisional remedy. Montrose disagreed, contending it was not asking for a

---

[1] On this eighth appellate proceeding in this coverage dispute, we ought to be on a first name basis with Penny Newman, J.B. Stringfellow et al. For those interested in historical minutia and fascinating details about predecessor corporations, policy numbers and the like, most of it can be found in *International Ins. Co.* v. *Superior Court* (1998) 62 Cal.App.4th 784 [72 Cal.Rptr.2d 849], and in the cases cited on page 786, at footnote 3 of that opinion.

preliminary injunction or any provisional remedy, only for an order enforcing the trial court's prior order pursuant to the court's inherent equitable powers. In March, the trial court issued an "enforcement order" directing AMICO to make an immediate payment to Montrose of specified attorneys' fees and costs, and to thereafter remain current in paying its share of "the full cost of defending" the contamination actions. No bond was required.

AMICO appealed. We affirmed the summary adjudication and enforcement orders, rejecting AMICO's contention that it could not be ordered to pay defense costs unless the trial court issued a preliminary injunction (or some similar *pendente lite* order) after considering the likelihood of Montrose's success on the merits, the adequacy of its legal remedies, and the threat of irreparable harm, and after requiring Montrose to post a bond. (*Montrose Chemical Corp.* v. *American Motorists Ins. Co.* (Jan. 25, 1993) B058060 [nonpub. opn.].)[2] To reach the merits of AMICO's appeal, we construed the trial court's 1989 order summarily adjudicating AMICO's duty to defend to include an implied order "sever[ing] the duty to defend from the remaining issues and enter[ing] a final judgment (order) on that collateral issue." (*Montrose Chemical Corp.* v. *American Motorists Ins. Co. supra*, B058060.) We then affirmed the trial court's order imposing a duty to defend, and approved its decision to defer consideration of AMICO's coverage defenses until after the underlying contamination actions were resolved. (*Ibid.*) We concluded that, "[w]hether the enforcement order [was] viewed as a permanent injunction or specific performance, . . . the evidence support[ed] the order" and conformed to " 'the settled rule that when a court of equity has obtained jurisdiction of the parties and of the subject-matter it will seek to administer complete relief, particularly with respect to finding the means of enforcing its decrees against a delinquent defendant.' " (*Ibid.*)

AMICO still did not comply with the order to pay Montrose's costs and it was not until December 4, 1994—after Montrose filed a separate bad faith action against AMICO—that AMICO finally reimbursed Montrose for past-due defense costs and began paying its share of current costs on an ongoing basis. In the bad faith action (which has yet to be tried), AMICO then stated its intent to assess and attack the reasonableness of Montrose's defense

---

[2]Our opinion was certified for publication and appeared, briefly, at 18 Cal.App.4th 133. On April 29, 1993, the Supreme Court granted review (S031548) on a "grant and hold" basis pending its decision in a related but separate case, *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287 [24 Cal.Rptr.2d 467, 861 P.2d 1153]. On February 10, 1994, the Supreme Court dismissed review and remanded the cause to us. On February 24, we issued our remittitur. The practical effect of all this is that our opinion, although unpublished, is the law of this case. (*People* v. *Allen* (1980) 101 Cal.App.3d 285, 290 [161 Cal.Rptr. 568].)

costs, notwithstanding that it had never questioned the itemized statements furnished by Montrose and its lawyers throughout the history of this action.[3]

Meanwhile, in June 1991, AMICO had filed a demand for a trial by jury "of all issues and matters properly triable by a jury in these consolidated actions." In the fall of 1997, AMICO advised Montrose and the trial court that it wanted a full-blown "trial" on the reasonableness of the defense costs incurred by Montrose since the commencement of the underlying contamination actions.[4] In early 1998, by which time Montrose had incurred about $35 million in defense costs, AMICO asked the trial court to decide whether it was entitled to a jury trial to determine the reasonableness of Montrose's fees and costs, and also to decide which party had the burden of proof.[5] In AMICO's view, the issue of reasonableness presents a question of fact for the jury, with the burden of proof on Montrose, as plaintiff, to prove that its fees and costs were reasonable. In Montrose's view, this action has been reduced to a claim for recoupment of allegedly unreasonable defense costs, a proceeding akin to an equitable accounting, with the burden on AMICO to prove that the fees and costs incurred by Montrose were *un*reasonable. The trial court ruled against AMICO on both issues, denying its motion for a jury trial and imposing the burden of proof on it, finding that this action is, fundamentally, "a declaratory relief action and equity action" presenting issues for decision by the court, not by a jury.

AMICO then filed a petition for a writ of mandate challenging both rulings. We issued an order to show cause and set the matter for oral argument.

---

[3]As a result, Montrose contends in this action that AMICO has waived its right to question the reasonableness of Montrose's fees and costs, that it is estopped from objecting, and that its wrongful denial of coverage restricts the scope of its reimbursement claims. These issues have not yet been decided by the trial court and are not before us at this time.

[4]When the trial court ordered AMICO to pay Montrose's defense costs, there was no issue about the reasonableness of the fees or costs incurred up until that date or proposed for the future. As a result, the trial court did not consider "reasonableness" and neither did we on the appeal from that order.

[5]At the risk of understatement, we think it is fair to describe the defense costs of $35 million as high. At least as viewed by Montrose, so too was its potential exposure in the underlying contamination actions—$750 million in *Newman,* $60 million just for property damage in *Parr-Richmond,* and an unstated amount in the *Stringfellow* CERCLA action. (CERCLA is the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq.) As we understand the current status of the contamination actions and the results obtained, Montrose's liability remains substantial, but it did not reach the outer limits of Montrose's worst-case scenario. Montrose settled the *Newman* case for $7.5 million and was dismissed six weeks into the first of what would have been several trials. *Parr-Richmond* has been substantially resolved by Montrose's payment of about $3.5 million. The *Stringfellow* case is still pending but it appears at this time that Montrose's exposure is, in context, insubstantial.

## DISCUSSION

### I.

 The issue is whether AMICO is entitled to a jury trial to determine whether Montrose's defense costs were reasonably incurred. To tether its jury demand to the Constitution, AMICO insists the present dispute must be viewed as a claim by Montrose for contract damages, no more and no less. Although AMICO may still see a forest of damages, we find only one remaining tree—and that is AMICO's equitable claim for reimbursement. For this reason, we agree with the trial court that AMICO is not entitled to a jury trial.[6]

### A.

 In California, our Constitution guarantees the right to a jury trial in actions at law, not those in equity. (*Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 462 [326 P.2d 484]; *Raedeke* v. *Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 670-672 [111 Cal.Rptr. 693, 517 P.2d 1157].) If the action deals with ordinary common law rights cognizable in courts of law, it is to that extent an action at law. (*C & K Engineering Contractors* v. *Amber Steel Co.* (1978) 23 Cal.3d 1, 9 [151 Cal.Rptr. 323, 587 P.2d 1136].) To determine whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by its nature, and a jury trial must be granted only "where the *gist* of the action is legal." (*Ibid.*) If the action is essentially one in equity and the relief sought depends upon the application of equitable doctrines, the parties are not entitled to a jury trial. Although the legal or equitable nature of a cause of action ordinarily is determined by the relief sought, the prayer for relief in a particular case is not conclusive—and the inclusion of a request for damages as one of a full range of possible remedies does not guarantee the right to a jury trial. (*Ibid.*)

Where (as here) there are equitable and legal remedies sought in the same action, the parties are entitled to have a jury determine the legal issues *unless* the trial court's initial determination of the equitable issues is also dispositive of the legal issues, leaving nothing to be tried by a jury. (*Raedeke* v.

---

[6]AMICO's insistence that the trial court "only rendered a decision with respect to the insurers' duty to defend" and that it "has yet to resolve Montrose's damages for the alleged breach of that duty" ignores the fact that the issue framed by AMICO turns on its entitlement to reimbursement of fees and costs already paid. More importantly, AMICO ignores Montrose's concession that it has "obtained all of the relief sought by its complaint" with regard to AMICO's duty to defend (a declaration of its rights and an order for specific performance) and that, *but for AMICO's claim for reimbursement of allegedly "unreasonable" amounts paid for Montrose's defense, "nothing further would remain to be litigated with respect to the duty to defend."* (Italics added.)

*Gibraltar Sav. & Loan Assn., supra,* 10 Cal.3d at p. 671 [it is "well established that, in a case involving both legal and equitable issues, the trial court may proceed to try the equitable issues first, without a jury" and that "if the court's determination of those issues is also dispositive of the legal issues, nothing further remains to be tried by a jury"].)

## B.

*Walton* v. *Walton* (1995) 31 Cal.App.4th 277 [36 Cal.Rptr.2d 901], articulates the dispositive rule. In *Walton,* two sons sued the administrator of their father's estate, claiming their father had orally agreed to devise specific shares in the family business to each of them. In separate causes of action, the sons sued for breach of contract, quasi-specific performance of the oral contract, money had and received, and restitution. At the request of the sons and over the objection of the administrator (who demanded a jury trial), the trial court severed the equitable claim for quasi-specific performance and set that claim for trial before the legal claims. Following a court trial of the quasi-specific performance claim, the court ruled in favor of the sons, made findings about the terms of the oral agreement, and entered orders based upon those findings. The sons dismissed their remaining claims and a final judgment was entered. (*Walton* v. *Walton, supra,* 31 Cal.App.4th at pp. 282-285.) The administrator appealed, contending she was entitled to a jury trial. The Court of Appeal disagreed and affirmed, explaining that an action for quasi-specific performance, like one for specific performance, is an action in equity, not one in law, notwithstanding that the court must determine the existence of the agreement to be performed. (*Id.* at p. 288.)

To avoid that conclusion, the administrator contended the sons' claims for damages for breach of the oral contract meant the gist of the action was one at law and created the right to a jury trial—which she said could not be defeated by an order severing the equitable claim. (*Walton* v. *Walton, supra,* 31 Cal.App.4th at p. 292.) The Court of Appeal disagreed, noting that a "plaintiff may plead inconsistent, mutually exclusive remedies, such as breach of contract and specific performance, in the same complaint." (*Ibid.*) The statutory provisions for severance and separate trials (Code Civ. Proc., §§ 598, 1048) are not limited to the separate trial of a "cause of action" but also authorize a separate trial of any "issue," and the mere fact that mutually exclusive remedies are pled does not change these rules or otherwise compel the court to try both or multiple remedies. At some point, an election of remedies may be compelled. (*Walton* v. *Walton, supra,* 31 Cal.App.4th at p. 292.) In *Walton,* the sons in effect elected to proceed on their quasi-specific-performance claim, and the trial court properly severed

that claim and tried it first, notwithstanding that it left nothing further to be tried by a jury. (*Id.* at p. 293.)

 *Walton* explains that, notwithstanding the general rule that a joinder of equitable and legal claims cannot deprive a party of a right to a jury trial, that right can be defeated when (1) a plaintiff seeks mutually exclusive remedies, (2) severance is properly granted, (3) the equitable claim is tried first by the court, and (4) the requested equitable relief is granted, thereby rendering the legal issues moot. (*Walton* v. *Walton, supra,* 31 Cal.App.4th at p. 293.) Although a request for quasi-specific performance cannot be used as a device to defeat the right to a jury trial (cf. *Patterson* v. *Insurance Co. of North America* (1970) 6 Cal.App.3d 310, 315-316 [85 Cal.Rptr. 665]), the request for equitable relief is proper where, as in *Walton,* the remedy at law is inadequate. In that event, the equitable claim may be tried first and the request for mutually exclusive remedies trumps the right to a trial by jury when the equitable remedy is severed, tried first and granted. (*Walton* v. *Walton, supra,* 31 Cal.App.4th at pp. 294-295.)

### C.

When AMICO appealed from the order compelling it to pay Montrose's defense costs, we rejected Montrose's contention that AMICO was attempting to appeal from a nonappealable interlocutory order. We pointed to Montrose's complaint and its two causes of action for declaratory relief, one addressing AMICO's duty to defend, the other the carrier's duty to indemnify. We held that the trial court's resolution of the duty to defend issues by means of a summary adjudication order later enhanced by a second order directing compliance with the first order were together appealable because "nothing further remained to be litigated in this action with respect to the duty to defend. Whether or not the duty to indemnify is ultimately determined to exist is irrelevant to the . . . determination and enforcement of the broader duty to defend, which requires only the potential of indemnity." (*Montrose Chemical Corp.* v. *American Motorists Ins. Co., supra,* B058060.) As we put it then, by "ordering the immediate payment of defense costs, the court below in effect severed the duty to defend from the remaining issues." (*Ibid.*)

In today's terms, the order compelling AMICO to pay Montrose's defense costs severed and decided in favor of Montrose its duty-to-defend declaratory relief cause of action. Since AMICO ultimately complied with that order, Montrose's duty-to-defend cause of action for breach-of-contract damages is moot, leaving only AMICO's demand for reimbursement of

whatever amount it allegedly overpaid. Although AMICO's cross-complaint includes a cause of action for "equitable recoupment," that claim was similarly mooted by our opinion on AMICO's appeal from the order compelling AMICO to pay Montrose's defense costs. (Compare *Connell* v. *Bowes* (1942) 19 Cal.2d 870 [123 P.2d 456] [in an action for specific performance, defendant's cross-complaint for damages gave rise to a right to a jury trial].) ■■■ As we explained in 1993, where (as here) a trial court grants a motion for summary adjudication establishing the existence of a duty to defend and orders the immediate payment of defense costs, the carrier must pay as ordered and all issues concerning the carriers' right to reimbursement of all or some part of the fees and costs thus paid are deferred until such time as that issue is ripe. (*Montrose Chemical Corp.* v. *American Motorists Ins. Co., supra,* B058060.) And where, as here, payment is compelled rather than voluntary, the carrier's right to reimbursement for allegedly excessive or unnecessary fees and costs is a claim for *equitable* restitution, not a claim for damages. (Cf. *American Oil Service* v. *Hope Oil Co.* (1961) 194 Cal.App.2d 581, 587 [15 Cal.Rptr. 209]; *Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 203 [231 Cal.Rptr. 791], disapproved on other grounds in *Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 50, fn. 12 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308, 1323-1324 [241 Cal.Rptr. 427], disapproved on other grounds in *Buss* v. *Superior Court, supra,* 16 Cal.4th at p. 50, fn. 12.)

As a practical matter, therefore, we see no difference between these facts and those before the court in *Walton.* There and here, mutually exclusive claims were pled by the plaintiff, with the equitable claim severed, tried first, and decided in the plaintiff's favor. There and here, the sequence in which things were done mooted the plaintiff's legal claim and thereby defeated the right the defendant would otherwise have had to a jury trial on that legal claim. Here as there, the procedure was proper. (*Walton* v. *Walton, supra,* 31 Cal.App.4th at pp. 292-294.)

## II.

■■■ AMICO contends that Montrose has the burden to prove that its fees and costs were reasonable. Montrose says the burden should be on AMICO to prove the fees and costs were *un*reasonable. The trial court agreed with Montrose and so do we. As the Supreme Court held in *Buss* v. *Superior Court, supra,* 16 Cal.4th 35 (an action in which a carrier sought reimbursement of defense costs advanced for noncovered claims), the insurer must carry the burden of proof. As the Court explained, "[t]he reason is this.

Evidence Code section 500 provides that, generally, a party desiring relief must carry the burden of proof thereon. We can find no exception for an insurer seeking reimbursement for defense costs. We will create none." (*Buss* v. *Superior Court, supra,* 16 Cal.4th at p. 53.) Neither will we.

## DISPOSITION

AMICO's petition is denied. Montrose is entitled to its costs of this writ proceeding.

Spencer, P. J., and Ortega, J., concurred.

A petition for a rehearing was denied January 11, 1999, and petitioner's application for review by the Supreme Court was denied March 24, 1999.